# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# NORTHWESTERN DIVISION

| | |
|---|---|
| Carmen and Carol Wold, Cordell Wold, Edith Wold, Kris Wold, Kevin Wold, and Lyle and Melba Larson as Trustees of the Larson Family Nominee Trust, <br><br> Plaintiffs, <br><br> vs. <br><br> Diamond Resources, Inc., Zavanna, LLC, and Zenergy, Inc. <br> Defendants. | **ORDER FOR REMAND** <br><br><br><br><br><br><br> Case No. 4:11-cv-046 |

| | |
|---|---|
| James and Jody Renbarger, Elise Renbarger, and Carolyn Benjamin, <br><br> Plaintiffs, <br><br> vs. <br><br> Diamond Resources, Inc., Zavanna, LLC, and Zenergy, Inc. <br> Defendants. | **ORDER FOR REMAND** <br><br><br><br> Case No. 4:11-cv-047 |

The above cases are before the court on motions for remand filed by plaintiffs. While the cases have not been joined, the issues presented by the motions are identical. In addition, plaintiffs in both cases are represented by the same attorney and the defendants are the same. Consequently, the motions will be considered together.

1

## I. BACKGROUND

In both cases, plaintiffs are the owners of mineral rights located in Mckenzie County, North Dakota, who entered into oil and gas leases with defendant Diamond Resources, Inc. ("Diamond"). Diamond later assigned its lease interests to defendant Zavanna, LLC ("Zavanna"). Also, in each case, defendant Zenergy, Inc. ("Zenergy") has drilled an oil well within a spacing unit that encompasses part or all of the acreage covered by the leases that are the subject of the case.[1]

The complaints in both cases were filed by the plaintiffs in state court. The complaints seek orders declaring that the referenced leases have lapsed and that title be quieted in plaintiffs' names free and clear of any claims of the defendants. In both cases, plaintiffs allege that the leases lapsed prior to any development that would extend or hold the leases, including the drilling of the wells by Zenergy. In addition, one or more plaintiffs in each of the cases allege that they have not been timely paid lease royalties. These plaintiffs seek cancellation of the leases for this reason as well or, in the alternative, statutory penalties.

Defendants removed the cases to this court alleging diversity as the basis for the court's jurisdiction. In the notices of removal, defendants acknowledge that Diamond is a nondiverse party. However, they allege that Diamond has no interest in this case, given the assignment of its lease interests to Zavanna, and that it has been named as a defendant solely for the purpose of defeating the court's jurisdiction. The issue presented by the motions for remand in each of the cases is whether the inclusion of Diamond as a defendant amounts to "fraudulent joinder."

---

[1] In the "Wold" case, it is the Pederson 10-3H well in Section 10, T152N, R98W. In the "Renbarger" case, it is the Rolfsrud 7-6H well in Section 7, T152N, R97W.

## II. DISCUSSION

### A. Governing law

A defendant may remove to federal court any civil action filed in state court in which the amount in controversy exceeds $75,000 and the citizenship of each plaintiff is diverse from the citizenship of each defendant. Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996); 28 U.S.C. §§ 1332 and 1441(a). This right "cannot be defeated by the fraudulent joinder of a resident defendant." Simpson v. Thomure, 484 F.3d 1081, 1083 (8th Cir. 2007) (quoting Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921)).

While actual fraud will invoke the doctrine of "fraudulent joinder," the term is somewhat of a misnomer in that proof of fraud is not required to invoke the doctrine. Joinder will also be considered "fraudulent" when there is no reasonable basis in fact or law for the claims being made against the non-diverse defendant, regardless of the plaintiff's intent in naming the non-diverse defendant. See, e.g., Schur v. L.A. Weight Loss Centers, Inc., 577 F.3d 752, 763 n.9 (7th Cir. 2009); Wilkinson v. Shackelford, 478 F.3d 957, 964 (8th Cir. 2007); Filla v. Norfolk S. Ry. Co., 336 F.3d 806, 810 (8th Cir. 2003); Iowa Pub. Serv. Co. v. Medicine Bow Coal Co., 556 F.2d 400, 406 (8th Cir.1977).

In removing an action, the defendant bears the burden of establishing the court's jurisdiction, including any claim of fraudulent joinder that is alleged to overcome the facial lack of diversity. Filla v. Norfolk S. Ry. Co., 336 F.3d at 810. All doubts about the court's jurisdiction and the claim of fraudulent joinder must be resolved in favor of remand. See id.; Wilkinson v. Shackelford, 478 F.3d at 964.

B.   **Discussion**

Plaintiffs have not disputed defendants' contention that Diamond has completely and irrevocably assigned its lease interest to Zavanna and has retained nothing.[2] Rather, their argument is that the assignments did not discharge Diamond of its contractual obligations under the leases because of the lack of their consent to a discharge, *i.e.*, the lack of "novation."

North Dakota follows the "well-established principle in the law of contracts that a contracting party cannot escape its liability on the contract by merely assigning its duties and rights under the contract to a third party." Rosenberg v. Son. Inc., 491 N.W.2d 71, 74 (ND 1992); see also Estate of Murphy v. Murphy, 554 N.W.2d at 437 ("Even where there is an effective assignment of a contractual obligation, the assignor's 'duty remains absolutely unchanged.'") (quoting 4 Corbin on Contracts § 866). Under North Dakota law, this principle applies to all categories of contracts, including the oil and gas leases at issue here. Cf. Holman v. State, 438 N.W.2d 534, 537 (ND 1989) ("[D]ocuments conveying oil and gas interests are subject to the same general rules that govern interpretation of contractual agreements."); see generally 5-64 E. Kuntz, A Treatise on the Law of Oil and Gas § 64.7 (Matthew Bender rev. ed. 2011) ["Kuntz"]; 2-4 P. Martin & B. Kramer, Williams & Meyers, Oil and Gas Law § 403.1 (Matthew Bender 2010) ("Williams & Meyers"). The only manner in which Diamond could have been discharged from its lease obligations is if there was a novation whereby plaintiffs expressly or impliedly consented to the discharge. See Estate of Murphy, 554 N. W.2d at 437; Rosenberg, 491 N.W.2d at 75.

---

[2] The assignment documents have not been made a part of the record despite the court's suggestion during a telephonic conference with the parties that they ought to be filed. The court assumes for the purposes of this order that Diamond completely assigned its interests to Zavanna and has not retained either a royalty interest arising out of the assignments or the right to reacquire the leases based upon the occurrence of a future contingency.

Defendants do not disagree with these well-established principles.[3] Rather, they point to a lease clause that is common to all of the leases, which states:

> If all or any portion of this lease is assigned, no leasehold owner shall be liable for any act or omission of any other leasehold owner.

Defendants argue that this language represents an agreement by the plaintiffs that Diamond would be released of its lease obligations upon a complete assignment of its interests.

But if that is the intended meaning of the lease language, at best it can only be inferred since neither this clause nor any other part of the leases expressly states that the independent obligations of the lessee to perform the lease covenants are extinguished upon assignment.[4] Moreover, there appears to be at lease one other plausible construction. Assume, for example, that original lessee A assigned a 40% undivided interest in the lease to B and the remaining 60% undivided interest to C. The language could be construed to mean that assignees B and C would be relieved of liability for each other's acts or omissions, but that it would not discharge the independent obligations of lessee A to the lessor.[5]

---

[3] Zavanna and Zenergy also argue that Diamond has no obligation to the plaintiffs since production did not take place until after the leases were assigned and royalty by definition is a share of production. However, this argument ignores the fact that the obligation to pay the royalty in each of the cases is created by the leases and that the leases impose this obligation upon the lessee, *i.e.*, Diamond. In other words, defendants cannot avoid the issue of whether Diamond's independent contractual obligation to pay the lease royalties has been extinguished simply by recasting the argument. E.g., Gillet v. Elmhurst Inv. Co., 207 P. 843, 844 (Kan. 1922) (lessee remains liable to pay royalty and perform the covenants of the lease even when the breach occurs after assignment); see generally Kunz at § 64.7; Williams & Meyers at § 403.1. Further, the obligation to pay royalties is not the only obligation that the lessee owes the lessor under the leases.

[4] The use of the words "acts or omissions" is also an odd choice of words, since they are more suggestive of tort liability than of breaches of contractual obligations or covenants running with the land.

[5] The court need not speculate why language having this effect would be desirable. However, the leases here are form leases and it could be an attempt to limit the liability of assignees for breaches of lease covenants by other assignees in situations where the assignees may have that liability. Cf. Hafeman v. Gem Oil Co., 80 N.W.2d 139 (Neb. 1956) ("[T]he assignee of an undivided interest in the entire lease becomes a tenant in common and as such jointly and severally liable for the performance of the covenants. He is, therefore, liable for all the delay rentals and for all the royalty, although he may in turn have a remedy against his joint obligor.") (quoting Mills and Willingham, Law of Oil

At the end of the day, it might very well be that defendants' construction of the lease language is the more plausible and that a state court will dismiss Diamond if the cases are remanded. But the question here is not what a North Dakota court would likely conclude, but rather whether there is any reasonable possibility of a conclusion either (1) that the lease language is not specific enough to extinguish Diamond's independent lease obligations or, perhaps, (2) that the language is ambiguous and further proceedings are required to resolve the ambiguity.[6] With respect to this question, defendants have failed to carry their burden of demonstrating that plaintiffs lack a "colorable claim" against Diamond.

Not surprisingly, the cases and treatises relied upon by the defendants reference lease language that is more explicit in stating that the obligations of the lessee are extinguished upon assignment, with one exception. See, e.g., 4-6 Williams & Meyers at § 677.3. The exception is Sims v. Inexeco Oil Co., 618 F. Supp. 183 (S.D. Miss. 1985), which contained a lease clause that is virtually identical to the one relied upon by the defendants here. However, the only issue that the court focused on in that case was whether the assignment was a true assignment or a sublease. The court did not address the particular arguments made by plaintiffs here. Also, it is only one case. In short, Sims is not enough, either in terms of its weight or persuasiveness, to fairly eliminate the

---

and Gas § 146).

[6] Diamond argues that plaintiffs understood when they executed the leases that it was simply a lease broker and that it would be assigning the leases to parties who would undertake to develop the lease acreage. From this, Diamond urges the court to draw the conclusion that the obvious intention of the parties was that Diamond would not remain liable under the leases following assignment. All of this might very well be. But, under North Dakota law, the court's ability to rely upon extrinsic evidence to construe the lease language is constrained in the absence of an ambiguity. E.g., Riverwood Commercial Park, LLC v. Standard Oil Co., Inc., 2011 ND 95, ¶ 7, 797 N.W.2d 770. And, if there is an ambiguity, then to reach the conclusion urged by Diamond, the court would have to also conclude that the extrinsic evidence it relies upon is (1) undisputed and (2) is the only material extrinsic evidence - neither of which are evident here. See id. at ¶ 18; Bernabucci v. Huber, 2006 ND 71, ¶ 21, 712 N.W.2d 323.

6

possibility that a North Dakota court might conclude that the language in question is not sufficiently explicit under North Dakota law to discharge the lessee of its obligations or is ambiguous.

**III.  ORDER**

Based on the foregoing, plaintiffs' motions for remand (Docket No. 21 in Case No. 4:11-cv-046 and Docket No. 28 in Case No. 4:11-cv-047) are **GRANTED** and the cases are **REMANDED** to state court based upon the lack of diversity jurisdiction.[7]

**IT IS SO ORDERED.**

Dated this 4th day of October, 2011.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr.
United States Magistrate Judge

---

[7] This may not forever insulate plaintiffs from the possibility of federal jurisdiction. If the state court agrees with defendants' construction of the lease language and promptly dismisses Diamond, defendants may still have the opportunity to remove the cases under the provisions of the second paragraph of 28 U.S.C. § 1446(b). E.g., Benson v. SI Handling Systems, Inc., 188 F.3d 780, 782-783 (7th Cir. 1999).